IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

**JEREMY STAFFORD, Individually and on Behalf of All Others Similarly Situated**  **PLAINTIFF**

vs.  No. 6:20-cv-6005-RTD

**THE BATH PLANET OF ARKANSAS, LLC, and CHRIS CUSICK**  **DEFENDANTS**

## ORIGINAL COMPLAINT—COLLECTIVE ACTION

COMES NOW Plaintiff Jeremy Stafford ("Plaintiff"), individually and on behalf of others similarly situated, by and through his attorneys Lydia H. Hamlet and Josh Sanford of Sanford Law Firm, PLLC, and for his Original Complaint–Collective Action ("Complaint") against Defendants The Bath Planet of Arkansas, LLC, and Chris Cusick (collectively "Defendant" or "Defendants"), and in support thereof he does hereby state and allege as follows:

### I. PRELIMINARY STATEMENTS

1. This is a collective action brought by Plaintiff, individually and on behalf of all others similarly situated, against Defendant for violations of the minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"), and the minimum wage and overtime provisions of the Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq.* (the "AMWA").

2. Plaintiff seeks a declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and a reasonable attorney's fee and costs as a result of

Defendant's failure to pay proper minimum wage and overtime compensation under the FLSA and the AMWA

## II. JURISDICTION AND VENUE

3. The United States District Court for the Western District of Arkansas has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the FLSA.

4. This Complaint also alleges AMWA violations, which arise out of the same set of operative facts as the federal cause of action; accordingly, this Court has supplemental jurisdiction over Plaintiff's AMWA claims pursuant to 28 U.S.C. § 1367(a).

5. Defendant conducts business within the State of Arkansas, operating a bathroom remodel company out of Hot Springs.

6. Venue lies properly within this Court under 28 U.S.C. § 1391(b)(1) and (c)(2), because the State of Arkansas has personal jurisdiction over Defendant, and Defendant therefore "resides" in Arkansas.

7. A substantial part of the acts complained of herein were committed and had their principal effect against Plaintiffs within the Hot Springs Division of the Western District; therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## III. THE PARTIES

8. Plaintiff is an individual resident and domiciliary of the State of Arkansas.

9. At all times material herein, Plaintiff has been entitled to the rights, protection and benefits provided under the FLSA 29 U.S.C. § 201, *et seq*.

10. Separate Defendant The Bath Planet of Arkansas, LLC ("Bath Planet"), is a domestic limited liability company.

11. Bath Planet's registered agent for service is Shaun Elgin Keefe, at 1801 Higdon Ferry Road, Suite C, Hot Springs, Arkansas 71913.

12. Separate Defendant Chris Cusick ("Cusick") is a resident and domiciliary of Arkansas.

13. Cusick is the owner, director and/or principal of Bath Planet.

14. Cusick manages and controls the day-to-day operations of Bath Planet, including but not limited to the decision to not pay Plaintiff a proper minimum wage and a sufficient premium for hours worked in excess of forty (40) per week.

15. Defendant's annual gross volume of sales made or business done was not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated) during each of the three calendar years preceding the filing of this Complaint.

16. During each of the three years preceding the filing of this Complaint, Defendant has at least two employees that handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce.

17. Defendant established and maintained the policies at issue in this case.

18. Defendant was, at all times relevant hereto, Plaintiff's employer and is and has been engaged in interstate commerce as that term is defined under the FLSA.

### IV. FACTUAL ALLEGATIONS

19. Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully incorporated in this section.

20. Defendant's primary business purpose is to provide bathroom installation services, and Defendant employs Installers to accomplish this goal.

21. Within three years prior to the filing of this Complaint, Defendants hired Plaintiff, among other individuals, to perform duties as an Installer.

22. Defendants were, for purposes of the FLSA, the employer of the Installers, including Plaintiff and the class members, throughout the relevant time period.

23. During the time period relevant to this lawsuit, Plaintiff and other Installers were treated as "independent contractors" for purposes of the FLSA.

24. To perform their jobs for Defendants, each and every Installer must be trained or oriented to their duties, Defendants' paperwork, processes and methods, customer requirements, and anything else they need to know to perform the work for Defendants.

25. Defendants exercised comprehensive control over the employment of its Installers, including Plaintiff's employment.

26. Defendants required Installers to follow a fixed schedule in performing their installations.

27. Installers could not refuse jobs which were assigned to them.

28. All Installers were expected to follow Defendants' dress code.

29. All Installers were hired to work for an indefinite period of time.

30. No Installers shared in Defendants' profits.

31. No Installers shared in Defendants' losses.

32. Defendants set the pay rate for Installers. Defendants compensated Installers, including Plaintiff, for their work on a piece-rate basis.

33. Installers were not involved in getting new customers for Defendants.

34. Defendants entered into contracts with their customers, and no Installers signed contracts with Defendants' customers.

35. Installers did not submit competitive pricing bids for installation or service.

36. Installers did not negotiate contracts or prices with Defendants' customers.

37. Defendants determined the Installers' pay scale for installation or service calls without input from or negotiation with Installers.

38. Defendants set prices to its customers for certain types of installations or service calls without Installer input or negotiation.

39. Defendants determined where to locate Defendants' branches and offices without Installer input.

40. Defendants made decisions on advertising Defendants' business without Installer input.

45. Installers did not advertise themselves.

46. Defendants made decisions on what new business to pursue or take without Installer input.

47. All Installers had at least one manager or other superior individual who was in charge of them and the other Installers at the branch, who made hiring and firing decisions, who arranged for training or orientation of new Installers, and who communicated corporate policies, decisions, or directives.

48. Defendants required Installers to follow Defendants' guidelines with respect to performing work.

49. Defendants had authority to fire Installers for insubordination or failure to adhere to any other of Defendants' policies or procedures.

50. Defendants required all Installers to obtain and maintain a certain level of liability insurance and required Installers to list Defendants on the insurance certificate.

51. Installers drove their own vehicles while performing installation services on Defendants' behalf.

52. Defendants partially reimbursed Installers for mileage.

53. Installers were required to pay for their own lodging when they had to stay overnight for a job.

54. During the relevant time, Plaintiff performed installation services and incidental duties on Defendants' behalf.

55. Plaintiff and similarly situated Installers were paid a piece rate of $100.00 for each service call; $200.00 for each "tear out" job; and $400.00 for each installation.

56. Each service call took Plaintiff between one (1) to four (4) hours to complete, plus up to ten (10) hours of drive time.

57. Each "tear out" job took Plaintiff between two (2) to eight (8) hours to complete, plus up to ten (10) hours of drive time.

58. Each installation took Plaintiff approximately eight (8) hours to complete, plus up to ten (10) hours of drive time.

59. Because Installers incurred unreimbursed automobile and travel expenses, Installers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

60. Defendants did not pay any Installers any overtime premium for hours that they worked over forty hours per week.

61. Defendants knew or should have known that the job duties of Plaintiff and other Installers required them to work hours in excess of forty per week, yet Defendants failed and refused to compensate Plaintiff and other Installers for their work as required by the FLSA.

62. At all times relevant hereto, Defendants were aware of the minimum wage and overtime requirements of the FLSA.

### V. REPRESENTATIVE ACTION ALLEGATIONS

63. Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully incorporated in this section.

64. Plaintiff brings his claims for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons who were, are or will be employed by Defendants as similarly situated employees at any time within the applicable statute of limitations period, who are entitled to payment of the following types of damages:

A. Minimum wages for the first forty (40) hours worked each week;

B. Overtime premiums for all hours worked for Defendants in excess of forty (40) hours in any week;

C. Reimbursement for travel-related expenses sufficient to bring compensation to minimum wages and overtime premiums;

D. Liquidated damages; and

E. Costs of this action, including attorney's fees.

65. Plaintiffs are unable to state the exact number of the class but believe that the class membership exceeds ten (10) people. Defendants can readily identify the

members of the classes, who are a certain portion of the current and former employees of Defendants.

66. The names and physical and mailing addresses of the probable FLSA collective action plaintiffs are available from Defendants, and notice should be provided to the probable FLSA collective action plaintiffs via first class mail to their last known physical and mailing addresses as soon as possible.

67. The email addresses of many of the probable FLSA collective action plaintiffs are available from Defendants, and notice should be provided to the collective action plaintiffs via email to their last known email address as soon as possible.

68. The phone numbers of many of the collective action plaintiffs are available from Defendants, and notice should be provided to the probable FLSA collective action plaintiffs via text message to their last known phone number as soon as possible.

69. The proposed class of opt-in plaintiffs in this case is preliminarily defined as follows:

**Each individual who performed installation services as an independent contractor on Defendants' behalf any time during the three years preceding the filing of the Original Complaint.**

70. The proposed FLSA class members are similarly situated in that they share these traits:

A. They performed the same or similar job duties;

B. They were subject to Defendants' common policy of paying them on a piece-rate basis;

C. They were subject to Defendants' common policy of failing to properly reimburse for travel-related expenses such as mileage and lodging;

D.  They were subject to Defendants' common policy of failing to properly pay overtime-rate wages for all hours worked in excess of forty (40) hours per week;

E.  They were subject to numerous other common policies and practices as described *supra*.

## VI. FIRST CAUSE OF ACTION
### (Individual Claim for FLSA Violations)

71. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

72. Plaintiff asserts this claim for damages and declaratory relief pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

73. At all relevant times, Defendant has been, and continues to be, an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203.

74. 29 U.S.C. §§ 206 and 207 require any enterprise engaged in commerce to pay all employees a minimum wage for all hours worked up to forty (40) in one week and to pay one and one-half times regular wages for all hours worked over forty (40) hours in a week, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and all accompanying Department of Labor regulations.

75. Defendant misclassified Plaintiff as exempt from the requirements of the FLSA.

76. Defendant failed to pay Plaintiff a minimum wage for all hours worked.

77. The costs that Plaintiff incurred, including, but not limited to, use of his own vehicle, for the benefit of Defendants, caused Plaintiff to "kick back" to Defendants an amount to cause Plaintiff's free and clear pay to fall below minimum wages.

78. Defendants also unlawfully refrained from paying Plaintiff an overtime premium for hours worked over forty per week.

79. Defendants' failure to pay Plaintiff all overtime wages owed was willful.

95. By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three (3) years prior to the filing of this Complaint.

## VII. SECOND CAUSE OF ACTION
### (Collective Action Claim for Violations of the FLSA)

96. Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully incorporated in this section.

97. Plaintiff, on behalf of all others similarly situated, asserts this claim for damages and declaratory relief pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

98. Defendants misclassified Plaintiff and similarly situated employees as exempt from the requirements of the FLSA.

99. Defendants failed to pay Plaintiff and other Installers minimum wages.

100. Additionally, the costs that Plaintiff and similarly situated employees incurred, including, but not limited to, use of their own vehicles, for the benefit of Defendants, caused Plaintiff and similarly situated employees to "kick back" to Defendants an amount to cause Plaintiff's and similarly situated employee's free and clear pay to fall below minimum wages.

101. Defendants unlawfully refrained from paying Plaintiff and similarly situated employees an overtime premium for hours worked over forty per week.

102. Defendants' failure to pay Plaintiff and similarly situated employees all minimum and overtime wages owed and to reimburse their work-related vehicle expenses was willful.

103. By reason of the unlawful acts alleged herein, Defendants are liable to members of the Section 216 class for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three (3) years prior to the filing of the Original Complaint.

### VIII. THIRD CLAIM FOR RELIEF
### (Individual Claim for Violation of the AMWA)

104. Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully set forth herein.

105. Plaintiff asserts this claim for damages and declaratory relief pursuant to the AMWA, Ark. Code Ann. §§ 11-4-201, *et seq.*

106. At all relevant times, Defendant was Plaintiff's "employer" within the meaning of the AMWA, Ark. Code Ann. § 11-4-203(4).

107. Sections 210 and 211 of the AMWA require employers to pay all employees a minimum wage for all hours worked, and to pay one and one-half times regular wages for all hours worked over forty hours in a week, unless an employee meets the exemption requirements of 29 U.S.C. § 213 and accompanying DOL regulations.

108. Defendants misclassified Plaintiff as exempt from the requirements of the AMWA.

109. Defendant failed to pay Plaintiff a minimum wage.

110. Defendant failed to pay Plaintiff an overtime premium for hours worked over forty per week.

111. Defendant knew or should have known that its practices violated the AMWA.

112. Defendant's conduct and practices, as described above, were willful, intentional, unreasonable, arbitrary, and in bad faith.

113. By reason of the unlawful acts alleged herein, Defendant is liable to Plaintiff for, and Plaintiff seeks, monetary damages, liquidated damages, prejudgment interest, and costs, including reasonable attorney's fees as provided by the AMWA.

## VIII. PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Jeremy Stafford, individually and on behalf of all others similarly situated, respectfully prays that each Defendant be summoned to appear and to answer this Complaint and for declaratory relief and damages as follows:

A. Declaratory judgment that Defendant's practices alleged in this Complaint violate the FLSA, the AMWA, and their related regulations;

B. Certification of a class under Section 216 of the FLSA of all individuals similarly situated, as further defined in any motion for the same;

C. Judgment for damages suffered by Plaintiff and all others similarly situated for all unpaid overtime compensation under the FLSA, the AMWA and their related regulations;

D. Judgment for liquidated damages owed to Plaintiff and all others similarly situated pursuant to the FLSA, the AMWA, and their related regulations;

E. An order directing Defendant to pay Plaintiff and all others similarly situated prejudgment interest, a reasonable attorney's fee and all costs connected with this action; and

F. Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

**JEREMY STAFFORD, Individually and on behalf of All Others Similarly Situated, PLAINTIFFS**

SANFORD LAW FIRM, PLLC
One Financial Center
650 South Shackleford, Suite 411
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

_____
Lydia H. Hamlet
Ark. Bar No. 2011082
lydia@sanfordlawfirm.com

_____
Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com